# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| MC ASSET RECOVERY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:06-CV-0417-BBM |
| | ) | |
| THE SOUTHERN COMPANY, | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | ) | |
| | ) | |

## MCAR's RESPONSE TO
## <u>SOUTHERN'S MOTION TO ESTABLISH GOVERNING LAW</u>

Plaintiff MC Asset Recovery, LLC (MCAR) responds to the *Motion to Establish the Governing Law* (the "Motion") and accompanying Memorandum ("Memo.") filed by The Southern Company ("Southern").

Southern's Motion is not timely. Although Southern states that it is not a trial brief, its memorandum addresses issues more appropriately resolved as part of the pre-trial procedures or in the context of a summary judgment motion, which, of course, provides for longer than a ten-day response time. Further, Southern's Motion seems to violate LR 7.1A.(2), which provides that, unless the time for filing a motion is otherwise specified or prior leave of court is obtained, all motions be filed within 30 days after discovery begins. If Southern had sought leave in this instance, it might not

have been granted.[1]

No effort was made to confer respecting this motion, and none may have been technically required, since it is not a discovery motion. However, such an effort would have revealed that there is no dispute with respect to the controlling law on some claims and might have uncovered the presumed "conflict" that Southern believes exists between the now repealed Georgia Fraudulent Transfer Statute and the Texas Uniform Fraudulent Transfer Act. In any event, MCAR believes the extent of the dispute, as well as the basis for it, should be addressed in the pre-trial process. To the extent the parties are unable to agree, a briefing schedule could be obtained from the Court, and this issue addressed in a more considered process.

Nonetheless, if the Court believes this matter is appropriately before it at this time, Southern's Motion respecting Plaintiff's fraudulent transfers claims must be denied for three reasons. First, Southern has failed to meet its burden to show that any conflict exists that requires a choice of law analysis. Second, a proper analysis under

---

[1] Where the facts of the fraudulent transfer are disputed, it may be appropriate to make the choice-of-law decision after all the evidence is in. *Hassett v. McColley (In re O.P.M. Leasing Servs., Inc.)*, 28 B.R. 740, 747-52 (Bankr. S.D.N.Y. 1983); *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204-05 (Tex. 2000). Not only have the parties not stipulated to the facts surrounding the transfers, fact discovery is ongoing in this case. For example, Southern has just identified between 4,000 to 6,000 additional email communications that it has stated will be reviewed for relevance and/or privilege and produced to Plaintiff "by the close of discovery," which is currently scheduled for March 4, 2008.

the appropriate choice of law rules yields the application of the Uniform Fraudulent Transfer Act ("UFTA"), not the old Georgia statute. Third, if Georgia law were in conflict with the UFTA, and a proper choice of law analysis among the states indicated the application of Georgia law, it would be preempted by application of the Federal Debt Collection Practices Act ("FDCPA"). With respect to the claims other than fraudulent transfer, Southern's Motion should be denied because the Court has already addressed those issues in its summary judgment order in this case.

1. **Without a Conflict in Laws, the Law of Texas, the Forum, Is Applied.**

Absent a showing of a conflict in the laws of the states that have an interest in the dispute (or with the federal government), the forum's law applies.[2] Since this case was transferred from Texas based on 28 U.S.C. § 1404(a), Texas is considered the forum.[3] Southern's burden, therefore, is to show that Georgia's law is in conflict and should apply. However, Southern fails to explain how Georgia's (repealed) law differs substantively from Texas' existing law or the law of any other state with

---

[2] *Fields v. Legacy Health Sys.*, 413 F.3d 943, 951 (9th Cir. 2005); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 691 (S.D. Tex. 2002); *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.), *mand. denied sub nom.*, *Deloitte & Touche LLP v. Fourteenth Court of Appeals*, 951 S.W.2d 394 (Tex. 1997).

[3] *Ferens v. John Deere Co.*, 494 U.S. 516, 524-28 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

HOU:2779029.3

interest in this dispute.[4]  Without specifying the nature of the conflict, any choice of law analysis is an abstract discussion, divorced from the competing state interests that power the modern approach.[5]  Therefore, because Southern has not satisfied its burden, the Uniform Fraudulent Transfer Act of Texas, the forum, should be applied. TEX. BUS. & COMM. CODE § 24.001 *et seq.*

2.  **A Proper State Conflict-of-Law Analysis Favors Application of the Uniform Fraudulent Transfer Act to the Fraudulent Transfer Claims.**

Simply assuming that a conflict exists, Southern recites modern choice-of-law principles, but applies the old *lex loci delecti* rule, arguing that the state where the resident transferor committed the fraudulent transfer supplies the law.[6]  However, this rule has been abandoned in Texas, as its Supreme Court explained in *Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex. 1979).  The rule developed "in the days when travel across state lines was relatively rare" and, though it tried "for uniformity of result and ease of application," it "ignored the very substantial interest of the forum state in applying its own law."  The old rule's results "were most often arbitrary and

---

[4] Indeed, the laws may not substantively differ, but their wording differences may create opportunities for mischief.  Expert Report of Elizabeth Warren (Ex. A) at ¶ 27.

[5] *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1242 n.7 (5th Cir. 1980); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 818 (E.D. Tex. 2002); *Dicello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 18 (Bankr. D.D.C. 1993); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984).

[6] Memo. at pp. 8-9.

4

unjust," causing "courts [to] engraft[] exceptions to the rule or circumvent[] its operation by strained characterizations of the facts." "The result was an unworkable, irrational system." Today, Texas courts apply a "new rule more attuned to the demands of modern society," which Southern, though espousing in principle, abandons in analysis.

In *Duncan v. Cessna*, 665 S.W.2d. 414 (Tex. 1984), the Texas Supreme Court specifically held that the *lex loci* rules would no longer be used in Texas to resolve conflicts problems, holding:

> [U]se of the most significant relationship approach in accordance with the general principles stated in [RESTATEMENT[7]] § 6 produces reasoned choice of law decisions grounded in those <u>specific</u> <u>governmental</u> <u>policies</u> relevant to the particular substantive issue. (emphasis added)

*Id.* at 421.

While the RESTATEMENT § 6 principles, discussed next, are what determine how the state contacts are evaluated, the contacts of states are not evaluated individually if their laws are the same, but, instead, states with similar laws are considered together

---

[7] Texas and federal courts use the RESTATEMENT's most significant relationship test formulation. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1296 n.19 (11th Cir. 1999).

HOU:2779029.3

and compared to states that have different laws.[8]  In the area of fraudulent transfers, where a state consensus has been achieved, this is critical.  As of the time Georgia adopted the UFTA in 2002, state laws on fraudulent transfer were largely in conformity with each other.  Currently, 43 states and the District of Columbia have adopted that uniform act.  Georgia, Indiana, Mississippi, Tennessee, and Wyoming joined the list after April 2001.  Two states with significant interest in this dispute are among them—Texas and Delaware.  New York, which is home to 98.5% of the dollar volume of unsecured creditors in this case, adopted the UFTA's predecessor, the Uniform Fraudulent Conveyance Act (UFCA).[9]  The UFTA's and the UFCA's "basic structure and approach" are the same, and, for present purposes, they have no significant difference.[10]  Five states have adopted neither the UFTA nor the UFCA, but have comparable fraudulent transfer standards.[11]  If Georgia's pre-2002 law

---

[8] *Dicello*, 160 B.R. at 18-19; *In re Morse Tool, Inc.*, 108 B.R. 384, 386, 388 (Bankr. D. Mass. 1989); *see generally Hughes Wood*, 18 S.W.3d at 205; RESTATEMENT § 145 cmt. i.

[9] Maryland and the Virgin Islands have also adopted the UFCA.  UNIF. FRAUDULENT CONVEYANCE ACT, 7A U.L.A. 246 (2006).

[10] The authors of the UFTA and UFCA describe the ways in which the UFTA differs from its predecessor, none of which differences have any substantive impact on this particular issue.  *Id*. at pp. 5-7; *see also* Expert Report of Elizabeth Warren (Ex. A) at ¶ 22 (noting that New York's UFCA law varies "only slightly" from the UFTA laws of Texas and Delaware).

[11] Expert Report of Elizabeth Warren (Ex. A) at ¶¶ 36-37; Raymond J. Blackwood,

(cont.)

conflicts with these standards, it stands alone.

### a. The UFTA/UFCA states have the most significant relationship to the fraudulent transfers in this case.

Determination of the most significant relationship in a choice-of-law context between UFTA/UFCA states as a group and Georgia involves weighing the "qualitative nature" of the contacts in light of these RESTATEMENT § 6 principles: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.[12]

These principles are not equal. The two most important in this context favor the UFTA. The first—the needs of the interstate and international systems—is "probably the most important" principle because choice-of-law rules "should seek to further harmonious relations between states and to facilitate commercial intercourse between

---

*Applying Fraudulent Conveyance Law to Leveraged Buyouts*, 42 DUKE L.J. 340, 354 n.80 (1992).

[12] *Gutierrez*, 583 S.W.2d at 318-19; RESTATEMENT § 6.

them."[13]  Given the UFCA/UFTA consensus, this principle disfavors applying Georgia law if it, in fact, is substantially different.[14]

Similarly, principle (e)—the "[b]asic policies underlying the particular field of law"—"is of particular importance" when the states have "largely the same" "policies," in which case, the law that "best achieve[s] the basic policy" is preferred.[15] The policy of all fraudulent transfer laws, even Georgia's Reconstruction-era law and especially its recent enactment of the UFTA, are to protect creditors.[16]  This principle, therefore, favors the UFTA as the law that accomplishes the basic policy of creditor protection.[17]  Indeed, the state law that best protects the creditors may be preferred in a choice-of-analysis.[18]

The other principles also point to the UFTA.  Principle (b)—the relevant policies of the forum—favors the UFTA because the forum is Texas, a UFTA state. Principle (c)—the relevant policies of other interested states and the relative interests

---

[13] RESTATEMENT § 6 cmt. d.

[14] *See* Expert Report of Elizabeth Warren (Ex. A) at ¶¶ 24-25, 52, 59.

[15] RESTATEMENT § 6 cmt. h.

[16] *Bay Plastics Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315, 322 (Bankr. C.D. Cal. 1995) (UFTA); *United States v. Reid*, 127 F. Supp. 2d 1361, 1369 (S.D. Ga. 2000) (prior Georgia law).

[17] *See* Expert Report of Elizabeth Warren (Ex. A) at ¶¶45-52, 57-58.

[18] *In re WorldCom, Inc.*, No. 02-13533(AJG), 2003 Bankr. LEXIS 1401, at *118-19 (Bankr. S.D.N.Y. Oct. 31, 2003).

8

of those states in determining the particular issue—favors the UFTA given the near unanimity of the states' adoption of it or laws like it.

Principles (f) and (g)—certainty, predictability, uniformity of result, and ease in determining and applying the law to be applied—also favor the UFTA. Applying the UFTA along with its federal twin the FDCPA, which is discussed below, certainly makes the UFTA easier to apply. For instance, the jury could receive one instruction on fraudulent transfer, not one under the FDCPA and one under state law. Also, as the parties agree, Delaware supplies the law for several causes of action in this case.[19] Delaware is a UFTA state; so, having one state's law apply to the various causes of action in the case simplifies addressing any interrelationship among them. Finally, given that Georgia nearly six years ago adopted the UFTA, it should be "eas[y]" for a Georgia court to "determin[e] and appl[y]" it, particularly a Georgia federal court.

On the other hand, principle (d)—the protection of justified expectations— "play[s] no part" in the analysis when the parties act "without giving thought to the legal consequences of their conduct or to the law that may be applied."[20] From Southern's perspective that appears to be the case. It certainly has not argued that it received transfers from its subsidiary in this case believing it would escape liability

---

[19] Memo. at pp. 15-16.

[20] RESTATEMENT §6 cmt. g.

HOU:2779029.3

for such transfers under Georgia law. From the perspective of debtors and creditors generally, on the other hand, this principle also favors the UFTA because they rely on the UFTA's ground rules in interstate transactions:

> Fraudulent conveyance law …. lays down … protections that every creditor dealing with every debtor can count on. Because of fraudulent conveyance law, creditors have a check on the activities of their debtors. That check is guaranteed by law, and it need not be negotiated into each contract. As a result, creditors can enter the marketplace secure in the expectation that if the debtor engages in fraudulent transactions, the creditor will be able to have those transactions rescinded.
>
> …. Using an outdated law creates the possibility of inconsistent outcomes. …Uniform state laws are designed precisely to avoid that kind of surprise in the commercial world.
>
> ….
>
> …To apply a non-uniform, repealed law in any circumstances in which it was not absolutely necessary to do so would upset reasonable commercial expectations….[21]

Southern extracts from several cases the fact it prefers—the state of the fraudulent transferor's conduct—and argues that this fact should control this case. In the choice-of-law context, however, trying to reach the "same" decision reached in another case in this way is especially difficult because the decision rests so heavily on *all* the facts of each case.[22] While acknowledging this difficulty, MCAR submits that,

---

[21] *See* Expert Report of Elizabeth Warren (Ex. A) at ¶¶24-25, 52.

[22] *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007); *see also Slater v. Skyhawk Transp., Inc.*, 77 F. Supp. 2d 580, 590-91 (D.N.J. 1999) ("it is not surprising that cases

(cont.)

10

applying the substantial relationship principles in the fraudulent transfer context leads

courts to decide the issue based on where the *creditors*—that is, the fraudulent transfer

victims—are located because the state interest in applying fraudulent transfer law is

felt most deeply there.[23] MCAR is not the only one to observe that the state where the

creditors are located tends to be the state's law that applies.[24] In this case, over 99%

of the unsecured creditor amount comes from UFTA or similar states, while less than

1/10th of 1% comes from Georgia.[25]

---

involving somewhat similar factual settings result in different choice of law decisions.").

[23] *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 198 B.R. 352, 362 (Bankr. D. Colo. 1996), *aff'd*, 354 F.3d 1246 (10th Cir. 2004); *Hassett v. Far W. Fed. Sav. & Loan Ass'n (In re O.P.M. Leasing Servs., Inc.)*, 40 B.R. 380, 393-95 (Bankr. S.D.N.Y.), *aff'd*, 44 B.R. 1023 (S.D.N.Y. 1984); *Consol. Capital*, 143 B.R. at 85; *Best Prods.*, 168 B.R. at 52; *In re O'Day Corp.*, 126 B.R. 370, 390-91 (Bankr. D. Mass. 1991); *In re Kaiser Steel Corp.*, 87 B.R. 154, 160 (Bankr. D. Colo. 1988).

[24] Stewart E. Sterk, *Asset Protection Trusts: Trust Law's Race to the Bottom?*, 85 Cornell L. Rev. 1035, 1079 (2000). The only exception is when the transfer involves real property, in which case the state in which the land is located tends to be dispositive.

[25] *See* Ex. N. Quantifying Mirant's creditors precisely is difficult and, ultimately, unimportant—the former because several ways exist to do it and each involves adding large numbers and the latter because, despite the various imprecisions, the conclusion clearly points away from Georgia. A review of the POCs for unsecured claims reveals POCs totaling $268.8 billion, of which $268.4 billion identify a U.S. jurisdiction. Of these, $267.9 billion (99.8%) are from UFTA, UFCA, or similar states and $0.2 billion (0.06%) are from Georgia. UFTA states alone total $261.9 billion (97.6%). A review of the unsecured creditors Mirant scheduled, putting aside those whose state is

(cont.)

In short, focusing on the RESTATEMENT principles, the UFTA/UFCA applies, not Georgia law. The cases Southern cites are not to the contrary. First, every fraudulent transfer case Southern cites involving a choice-of-law analysis determined that *UFTA/UFCA* law ought to apply.[26] Second, while they note that the defrauder's location is important, even in these cases, the creditors' location is significant.[27]

Finally, Southern has misread the cases as broadly holding that "where the allegedly fraudulent transfers were made in the state where the debtor-transferor

---

not identified (primarily inter-company entries), reveals $714.3 million in unsecured debt. Of this, UFTA and UFTA-like states represent 99.4% ($710.1 million) whereas Georgia represents 0.0006% ($4.2 million). New York alone represents 98.5% ($703.7 million).

[26] *Weinman*, 198 B.R. at 362-63; *Morse Tool*, 108 B.R. at 386, 388; *Kaiser Steel*, 87 B.R. at 159-60; *Warfield v. Carnie*, No. 3:04-cv-633-R, 2007 U.S. Dist. LEXIS 27610, at *25 (N.D. Tex. Apr. 13, 2007); *Nat'l Ctr. for the Employment of the Disabled v. Ross*, No. CV 05-2014-PHX-JAT, 2006 U.S. Dist. LEXIS 18266, at *18-19 (D. Ariz. Mar. 27, 2006); *Askanase v. Fatjo*, No. H-91-3140, 1993 U.S. Dist. LEXIS 7911, at *8-9 (S.D. Tex. Apr. 22, 1993).

[27] *Weinman*, 198 B.R. at 362 ("A significant number of the creditors affected by the transfer were located in Texas."); *Morse Tool*, 108 B.R. at 388 (the state law to be applied had "the largest concentration (both in number and in amount owed) of the Debtor's creditors."); *Kaiser Steel*, 87 B.R. at 160 ("a significant number of the creditors who may have been affected by the transfers were located in California."). One case did not involve creditors at all, just investors. *Warfield*, 2007 U.S. Dist. LEXIS 27610, at *23. Another case involved only one creditor and was not brought on behalf of the creditor estate. *Ross*, 2006 U.S. Dist. LEXIS 18266, at *18-19. In the last case, the trustee did not invoke any state fraudulent transfer law at all because he could not prove the absence of fair consideration, and, regardless, the court decided it could not determine the proper state law to apply. *Askanase*, 1993 U.S. Dist. LEXIS 7911, at *3 n.2.

HOU:2779029.3

resides or has its principal place of business, that state has the 'most significant relationship' to the plaintiff's avoidance claim."[28]  Southern's primary authority, for instance, explains why, in that case, the debtor's location was so central:  the debtor's creditors "had little cause to suspect that the collectability of their claims would be subject to the law" of any other state because the debtor "had no assets or operations" in those states.[29]  This hardly describes Mirant's national footprint, with substantial operations in *only* UFTA and UFTA-like states:  Arkansas, California, Indiana, Louisiana, Maryland, Massachusetts, Michigan, Nevada, New York, Texas, Virginia, and Wisconsin.[30]

> **b.**      **Georgia no longer has an interest in imposing its old fraudulent transfer law on the creditors of other states.**

MCAR does not deny that Georgia has contacts with the fraudulent transfers.  It is the headquarters of Southern and Mirant (though not where they are incorporated, which is Delaware) and is where many of the acts of the fraudulent transfers occurred. As Southern observed in its memorandum, however, it is not the existence of contacts that drives the choice-of-law analysis, but the "qualitative nature" of those contacts, which is determined by the principles discussed above.  That is, deciding choice-of-

---

[28] Memo. at pp. 8-9.

[29] *Morse Tool*, 108 B.R. at 387.

[30] *See* Mirant S-1A (Sept. 26, 2000) at p. 71 [Bates No. M4165460-61] (Ex. O).

HOU:2779029.3

law issues depends on the "interests" or "policies" of the respective states in having its law applied.[31]

Georgia's recent enactment of the UFTA clearly expresses Georgia's *lack* of interest in having its *old* law applied to its citizens. The purpose of the UFTA that Georgia adopted six years ago is to prevent debtors from transferring assets for "less than adequate value" when doing so "leaves insufficient assets" for "honest creditors."[32] That is and has been Georgia's interest.

Because Georgia has no interest in having its old law apply to the fraudulent transfers of this case, this Court may resolve any state conflict of laws in favor of the UFTA without prejudice to Georgia. This is *not* retroactively applying Georgia's UFTA, but merely recognizing that Georgia's interest in having its outdated law apply to this case is negligible. That is, the UFTA does not apply in this case because Georgia's UFTA applies retroactively, but because the interest of the UFTA states outweighs Georgia's interest in prolonging its repealed statute.

---

[31] *Hassett*, 40 B.R. at 395; *Morse Tool*, 108 B.R. at 385; *Duncan*, 665 S.W.2d. at 421; RESTATEMENT § 6 (principles include "the needs," "relevant policies," and "basic policies" of the states).

[32] *Bay Plastics*, 187 B.R. at 322. Even Georgia's old statute was to be liberally construed to affect its "salutary, remedial purpose." *Reid*, 127 F. Supp. 2d at 1369. That law stemmed from Reconstruction-era concerns for protecting innocent family transfers from creditors. *First Nat'l Bank v. Bayless*, 23 S.E. 851, 852-53 (Ga. 1895).

HOU:2779029.3

Southern's citation to *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1086-87 (11th Cir. 2004) is not to the contrary. *Chepstow* dealt with which Georgia fraudulent transfer law applied before July 1, 2002. It did not deal with choice of law at all. The choice the 11th Circuit faced in *Chepstaw* was application of the old Georgia law or having no fraudulent conveyance law at all for the gap period between the repeal of the old law and the new law's effective date because the Georgia Legislature failed to include a savings clause. The 11th Circuit simply chose to recognize the state's strong policy on fraudulent transfers and applied the only law it could.

Recognizing that Georgia's old law is not retroactive does not mean the UFTA cannot apply to transfers before then having a relationship to Georgia. As the Iowa Supreme Court noted in *Berghammer v. Smith*, 185 N.W.2d 226, 232-33 (Iowa 1971), even a prospective change in the law bears on how to reconcile conflicting state laws when the change in law, even though prospective, reconciles the conflict. In short, Georgia cannot logically have an interest in applying the law it rejected six years ago.

### c. Southern confuses the analysis for §1404(a) transfers and that for choice of law.

Southern proffers the § 1404(a) transfer of this case from Texas to Georgia as proof that Georgia has the most significant relationship to the fraudulent transfer

HOU:2779029.3

claims in this case.[33]  This simply does not follow.  First, as discussed above, *policy interests of the states* are balanced when conducting a choice-of-law analysis, whereas a § 1404(a) transfer involves balancing *convenience of parties and witnesses* with the interest of justice.  Second, as discussed above, choice-of-law analysis groups together states with similar laws in determining the most significant relationship, while, obviously, a § 1404(a) transfer cannot be to a group of states.

It is not surprising, therefore, that courts, after a § 1404(a) transfer, analyze the choice-of-law issues despite a previous transfer and, when appropriate, conclude that the state with the most significant relationship to the issues at stake differs from the one in which the case may be more conveniently tried.[34]  The same must be done in this case.

3.    **The Federal Debt Collection Practices Act (the "FDCPA") Preempts Any Conflicting State Law on the Fraudulent Transfer Claims.**

Southern's Motion ignores the 800-pound gorilla in the case—the FDCPA.[35]

---

[33] Memo. at pp. 2, 5-6, 8 n. 5, 10 n.7.  While the transferor court's opinion does include, in its discussion of § 1404(a) convenience, consideration of where the transfer occurred, there is no consideration or weighing of policy interests as required under the most significant relationships analysis.

[34] *Jaurequi v. John Deere Co.*, 986 F.2d 170, 171-76 (7th Cir. 1993); *Emke v. Compana, L.L.C.*, No. 3:06-CV-1416-L, 2007 U.S. Dist. LEXIS 70826, at *10-15 (N.D. Tex. Sept. 25, 2007).

[35] The absence of any discussion of this provision's effect on choice of law is

(cont.)

HOU:2779029.3

The FDCPA, the federal equivalent of the UFTA,[36] applies whenever the United States is owed money "on account of a fee, … assessment, … tax, … or other source of indebtedness to the United States, but that is not owing under the terms of a contract…."[37]

### a. The United States was an unsecured creditor of Mirant as of the Petition Date and at all relevant dates before that.

The Federal Energy Regulatory Commission filed a proof of claim (POC) against Mirant based on the California price-fixing litigation. Ex. B (POC No. 7566). This was settled as a part of the global California litigation settlement. *See* Ex. C [Mirant Dkt. No. 11067].

The Department of Treasury also filed proofs of claim against Mirant subsidiaries Mirant Mid-Atlantic Services, LLC, Mirant Services, LLC, and Mirant Energy Marketing LP for unpaid federal employment and unemployment taxes— FICA (Federal Insurance Contributions Act, 26 U.S.C. §§ 3101 *et seq.*) and FUTA (Federal Unemployment Tax Act, 26 U.S.C. §§ 3301 *et seq.*). Exs. D, E, F, H & I

---

surprising since MCAR specifically pled it. MCAR's complaint [Dkt. No. 210 at ¶¶ 40-46]. By not addressing it initially, Southern provides itself with the opportunity to discuss a known issue in its reply, thereby precluding MCAR an opportunity to rebut.

[36] *Compare* 28 U.S.C. § 3301 et. seq. *to* UNIF. FRAUDULENT TRANSFER ACT § 1 et seq., 7A U.L.A. 5 et seq.

[37] 28 U.S.C. §§ 3001(a)(2), 3002(3)(B).

HOU:2779029.3

(POCs 7794, 8369, 8373, 7785 & 7807). Reorganized Mirant objected to POCs 7794, 8369, and 8373, but it and Treasury resolved the objections by Stipulation, which provided, in relevant part, that all three claims were valid and allowable and that all Debtors, including Mirant, were jointly and severally liable on them. Ex. G, p.7 [Mirant Dkt. No. 14591]. Treasury's other POCs against Mirant Services and Mirant Energy Marketing LP were not disallowed and are presumptively valid.

Mirant, Mid-Atlantic Services, and Mirant Services all filed Statements of Financial Affairs acknowledging that they are part of a tax consolidation group for which Mirant is the parent and that consolidated tax returns were filed for the tax years 1997 through 2002, making Mirant, as the parent, liable for the taxes the corporate group owed. Exs. J, K, & L; 26 CFR 1.1502-6(a); *Whyte v. GMF Invs., Inc.* (*In re Fairchild Aircraft Corp.*), 126 B.R. 717, 722 (Bankr. W.D. Tex. 1991); 128 B.R. 974 (Bankr. W.D. Tex. 1991) (clarifying).

FICA taxes the employees' income and obligates the employer to collect the tax through withholding. 26 U.S.C. §§ 3102 & 3402. While Mirant subsidiaries handled the payroll, Mirant was the common law employer as "the person for whom an individual performs or performed any service." 26 U.S.C. § 3401(d); *In re Prof'l Sec. Servs., Inc.*, 162 B.R. 901, 903 (Bankr. M.D. Fla. 1993). "The common law employer has a non-delegateable duty to timely perform its federal income tax obligations and

cannot avoid its tax liability by contracting away the responsibility for the payment of wages." *United States v. Total Employment Co., Inc.*, 305 B.R. 333, 338 (M.D. Fla. 2004).

Furthermore, independent of the duty of withholding from the employees' wages, FICA and FUTA impose a direct tax on the employer, which is the person for whom the individual performs the services. 26 U.S.C. §§ 3101-3112, 3121-28, 3301-3311, 3401(d). Therefore, Mirant, as the employer, was responsible for both the withholding and the employer tax. *In re Telecard Commc'ns Int'l, Inc.*, No. 99-24811-BKC-RBR, 2001 Bankr. LEXIS 1721, at *12 (Bankr. S.D. Fla. Nov. 17, 2001); *In re Earthmovers, Inc.*, 199 B.R. 62, 67 (Bankr. M.D. Fla. 1996), *vacated on other grounds, dismissed as moot, by Sunshine Staff Leasing v. Earthmovers*, 242 B.R. 49 (M.D. Fla. 1999).

Finally, Mirant's general ledger itself reflects that the United States was owed between nearly $200 million to over $1 billion as of the dates of the transfers at issue. Ex. M, *Declaration of Steven A. Wolf in Support of Submission of Summary*.

### b.    MCAR may rely on the FDCPA in support of its fraudulent transfer claims.

A trustee may void in its entirety for the benefit of the estate a transfer voidable,

HOU:2779029.3

even in part, by any one creditor.[38]  Frequently, the United States is a triggering

creditor[39] and the FDCPA is cited as an "applicable law" to set aside fraudulent

transfers in bankruptcy.[40]  In sum, since the United States is a Mirant creditor and can

avoid the transfers under the FDCPA, MCAR on behalf of the United States and all

other Mirant creditors may avoid the transfers on the same basis.[41]

### c.    The FDCPA, as federal law, preempts any conflicting state law.

Federal substantive law, when applicable, necessarily applies in all states;

therefore, determining which state's law applies is irrelevant to federal statutes.[42]  A

---

[38] *Moore v. Bay*, 284 U.S. 4, 5 (1931) (Holmes, J.); *Abramson v. Boedeker*, 379 F.2d 741, 749 (5th Cir. 1967) (pre-11th Circuit split); SJM Order pp. 12-17 [Dkt. No. 199].

[39] *Coleman v. Cmty. Trust Bank, N.A. (In re Coleman)*, 299 B.R. 780, 794 (D.W.Va. 2003), *aff'd in part, rev'd in part*, 426 F.3d 719 (4th Cir. 2005); *In re Greater S.E. Cmty. Hosp.*, 365 B.R. 293, 307-308 (Bankr. D.D.C. 2006); *Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*, 347 B.R. 17, 18-19 (Bankr. W.D. Pa. 2006); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 95-97 (Bankr. W.D. Tex. 2004); *Gurley v. Mills (In re Gurley)*, 222 B.R. 124, 132 (Bankr. W.D. Tenn. 1998); *Pate v. Hunt (In re Hunt)*, 136 B.R. 437, 450 (Bankr. N.D. Tex. 1991).

[40] *Pajaro Dunes Rental Agency v. Spitters (In re Pajaro Dunes Rental Agency)*, 174 B.R. 557, 572 n.42 (Bankr. N.D. Cal. 1994); *Freeland v. Enodis Corp. (In re Consol. Indus. Corp.)*, ch. 7 Case No. 98-40533, Adv. No. 99-04022, slip op. at 9-10, 12 n.10 (Bankr. N.D. Ind. July 28, 2004) [Ex. P], *aff'd, Freeland v. Enodis Corp. (In re Consol. Indus. Corp.)*, No. CV4:04CV64, 2006 U.S. Dist. LEXIS 79620 (N.D. Ind. Oct. 31, 2006); *see also Ford v. United States (In re Ford)*, No. 93-2488, 1994 U.S. App. LEXIS 13365 (4th Cir. June 6, 1994) (per curiam).

[41] *See Pate*, 136 B.R. at 450-51; *United States v. Gleneagles Inv. Co.*, 565 F. Supp. 556, 583 (M.D. Pa. 1983), *aff'd*, 803 F.2d 1288 (3d Cir. 1986).

[42] U.S. CONST. art. VI, cl. 2; *Testa v. Katt*, 330 U.S. 386, 391 (1947).

HOU:2779029.3

"state law that conflicts with federal law is without effect."[43]  State law cannot

obstruct accomplishing the full purposes and objectives of federal law.[44]  A federal

statute creating an independent right of the federal government prevails against any

contrary state law.[45]  So, if a state's fraudulent transfer law stood in the way of

accomplishing a federal law, the federal law would prevail.[46]

Given the supremacy of federal law, to the extent a state law conflicts with it,

the FDCPA preempts the state law.[47]  Therefore, if Georgia's pre-2002 law

prejudicially conflicts with the FDCPA, MCAR is entitled to rely on the FDCPA to

recover for the fraudulent transfer on behalf of all creditors.

4.   **This Court Has Already Determined Governing Law With Respect to all Remaining Claims.**

As with the fraudulent transfers, Southern has asked the Court to decide the

choice of law on the other causes of action—unjust enrichment, breach of fiduciary

duty, aiding and abetting a fiduciary duty breach, and alter ego claims—without ever

---

[43] *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

[44] *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 232-33 (4th Cir. 2001).

[45] *United States v. Nation*, 299 F. Supp. 266, 267 n.1 (N.D. Okla. 1969); *United States v. Jones*, 264 F. Supp. 11, 13 (E.D. Va. 1967).

[46] *Valley Ranch Dev. Co. v. Sunbelt Sav. FSB*, 714 F. Supp. 817, 818 (N.D. Tex. 1989), *aff'd on other grounds sub nom. Gulley v. Sunbelt Sav. FSB*, 902 F.2d 348 (5th Cir. 1990).

[47] *United States v. Pierce*, 231 B.R. 890, 893 (E.D.N.C. 1998).

HOU:2779029.3

identifying the conflict in the law. Without a conflict identified, the Court has no conflict to resolve.[48] At least in the fraudulent transfer context, uniform state laws made it possible to suppose a conflict with any non-uniform laws, as discussed above. The other causes of action, however, are state specific. Southern's failure to identify the state law conflict deprives the choice-of-law analysis of its first step.[49]

Further, the Motion largely repeats (and, in one instance, conflicts with) this Court's order on Southern's previous summary judgment motion. Apart from fraudulent transfer claims, the Court has already decided which state law governs which causes of action.[50] The Court, based on the parties' briefing, applied Delaware law to breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and alter ego claims and applied Georgia law to unjust enrichment claims.[51] Southern's current Motion should be denied at least to those claims, since the Court has already made that determination in the context of an earlier Southern motion and no reconsideration showing has been made.

---

[48] *Fields*, 413 F.3d at 951; *In re Enron Corp. Secs.*, 235 F. Supp. 2d at 691; *Weatherly*, 905 S.W.2d at 650.

[49] *Brewer*, 626 F.2d at 1242 n.7; *In re Norplant*, 215 F. Supp. 2d at 818; *Dicello*, 160 B.R. at 18; *Duncan*, 665 S.W.2d at 419.

[50] SJM Order [Dkt No. 199] at 11 n.7 (noting no briefed conflict on fraudulent transfer claims).

[51] *Id.* at pp. 20, 26-27.

HOU:2779029.3

If the Court were to revisit its prior conclusion, which was primarily based on Southern's lack of disagreement on choice of law when it moved for summary judgment, Southern's current Motion differs from the Court's previous determinations on these other claims only with respect to the aiding and abetting a fiduciary duty breach. Previously, the Court had determined that Delaware governed that claim, whereas the Motion asks the Court to apply Georgia law. The Court's previous conclusion was the correct one. Courts typically apply the law of incorporation—Delaware, in this case—to an aiding and abetting claim.[52]

## Conclusion

For the foregoing reasons, Southern's Motion should be denied.

---

[52] *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1321 (table), 2000 U.S. App. LEXIS 3468 (2d Cir. Feb. 24, 2000); *Official Comm. v. Investcorp S.A.*, 80 F. Supp. 2d 129, 135 (S.D.N.Y. 1999); *Lou v. Belzberg*, 728 F. Supp. 1010, 1023 (S.D.N.Y. 1990); *see also Buckley v. Deloitte & Touche USA LLP*, 06 Civ. 3291 (SHS), 2007 U.S. Dist. LEXIS 37107, at *37 (S.D.N.Y. May 21, 2007) ("courts in this district have regularly held that because claims of aiding and abetting a breach of fiduciary duty relate to the internal affairs of a corporation, they are also governed by the law of the state of incorporation"). Some courts independently evaluate the state interests to reach a choice-of-law conclusion with respect to aiding and abetting claims. *Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998). Southern, by failing to identify the conflict, has made this impossible.

HOU:2779029.3

Respectfully submitted this 25th day of February, 2008.

By: */s/ Charles E. Campbell*
 Charles E. Campbell
 Georgia Bar No. 106100
 Nathan Lewis Garroway
 Georgia Bar No. 142194
 **McKenna Long & Aldridge LLP**
 303 Peachtree St., N.E., Suite 5300
 Atlanta, Georgia  30308
 Telephone:  (404) 527-4000
 Facsimile:  (404) 527-4198
 ccampbell@mckennalong.com
 ngarroway@mckennalong.com

 Richard H. Caldwell
 Texas Bar No. 03631000
 John A. Lee
 Texas Bar No. 12125400
 David Griffith
 Texas Bar No. 08479350
 **Andrews Kurth LLP**
 600 Travis, Suite 4200
 JPMorgan Chase Tower
 Houston, Texas  77002
 Telephone:  (713) 220-4200
 Facsimile:  (713) 220-4285
 rcaldwell@andrewskurth.com
 lee@andrewskurth.com
 dgriffith@andrewskurth.com

 **Attorneys For MC Asset Recovery, LLC**

HOU:2779029.3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MC ASSET RECOVERY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:06-CV-0417-BBM |
| | ) | |
| THE SOUTHERN COMPANY, | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | ) | |

## <u>CERTIFICATE UNDER LOCAL RULE 7.1(D)</u>

Pursuant to Local Rule 7.1(D), I certify that the foregoing pleading is a computer-generated document, prepared in Times New Roman 14-point font, in accordance with Local Rule 5.1(B).

Respectfully submitted, this 25th day of February, 2008.

/s/ *Charles E. Campbell*
Charles E. Campbell
Georgia Bar No. 106100

McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300      *Attorneys for Plaintiff*
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)
ccampbell@mckennalong.com

HOU:2779029.3

# CERTIFICATE OF SERVICE

This is to certify that on February 25, 2008, I electronically filed the within and foregoing **MCAR's Response to Southern's Motion to Establish Governing Law** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Christopher S. Anulewicz | John A. Lee |
| Michael J. Bowers | W. Scott Locher |
| Charles E. Campbell | Janine Cone Metcalf |
| Gordon Lee Garrett, Jr. | Ryan Preston Reavis |
| Nathan L. Garroway | Robin Russell |
| David Craig Kiernan | |

I hereby certify that I have served the within and foregoing upon all non-CM/ECF parties to the above-captioned action by depositing a copy of the same in the United States Mail, with sufficient postage thereon, properly addressed to:

| | |
|---|---|
| Richard H. Caldwell | Gregory M. Gordon |
| Jennifer M. Gore | Jones Day |
| David P. Griffith | 2727 North Harwood Street |
| Paul D. Moak | Dallas, Texas  75201 |
| A Ross Rommel, Jr. | |
| Basil A. Umari | |
| David A. Zdunkewicz | |
| Andrews & Kurth | |
| 600 Travis Street, Suite 4200 | |
| Houston, TX  77002 | |

/s/ *Charles E. Campbell*

Charles E. Campbell
Georgia Bar No. 106100

*Attorneys for Plaintiff*

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)
ccampbell@mckennalong.com

HOU:2779029.3